**In re Howard Dale ROUSE and Shannon D. Rouse, Debtors.**

**Bankruptcy No. NG 92–83300.**

United States Bankruptcy Court,
W.D. Michigan.

Sept. 29, 1992.

Roger G. Cotner, Grand Haven, Mich., for debtors.

Robert D. Jaehnig, Grand Haven, Mich., for Ottawa County Friend of the Court.

## OPINION AND ORDER

DAVID E. NIMS, Jr., Bankruptcy Judge.

Howard Dale Rouse and Shannon D. Rouse filed a motion on July 1, 1992, for an order requiring Robert D. Jaehnig, Esq., Ottawa County, Michigan, Friend of the Court (Jaehnig), to return the debtors' income tax refunds related to taxable year 1991, pursuant to 11 U.S.C. § 542(a), which refunds were claimed to be exempt by the debtors under 11 U.S.C. § 522(d)(5).

## FACTS

Debtors filed a voluntary petition for relief under chapter 7 on June 8, 1992. On the same day, this court entered an order for relief and issued a notice of the automatic stay under 11 U.S.C. § 362.

On February 12, 1992, the Debtors had filed a 1991 income tax return, which reflected a refund due to them in the sum of $1,633.50. They also filed on that day a 1991 Michigan tax return showing an income tax refund due in the amount of $288.79 plus a $205.32 home heating credit for a total state refund in the sum of $493.61.

Pursuant to federal and state statutes, Jaehnig annually reports to the United States Department of the Treasury and the Michigan Department of Revenue, through the Michigan Office of Child Support Enforcement, support delinquency information. Howard Rouse was delinquent under an order requiring him to pay child support, an amount which was subsequently waived by Shannon Rouse, and under an order requiring him to pay confinement costs for the birth of his child.

Around May 5, 1992, the U.S. Department of Treasury intercepted the Debtors' 1991 federal income tax refund of $1,633.50. On May 18, 1992, Jaehnig sent a message to the Debtors, notifying them that the Ottawa County Friend of the Court had received their tax refund of $1,634 on 5/5/92.

On May 5, 1992, the Michigan Department of Treasury sent to debtors a "Notice of Income Tax Refund Used To Pay Debts." This notice indicated that since the Department had not received the "Income Allocation to Non-Obligated Spouse (form C-4297) which had been mailed a month earlier. It forwarded the total refund of $288.29 to the Friend of the Court, Ottawa County. The notice also informed debtors of whom to call with questions in regard to the amount of the obligation, the offset process, or how the refund was applied. Jaehnig contends that the Friend of the Court received only $32. from the State, and that was applied to the County Treasurer's handling fees. The exact accounting for these funds is a matter for the individual agencies and will not impact this court's opinion.

Debtors' counsel telephoned Jaehnig shortly before May 26, 1992 and demanded that he return the escrowed funds to the Debtors. As a result of the said telephone call, Jaehnig filed a "Petition For Order Of Sequestration and Order To Show Cause" in Circuit Court for the County of Ottawa on May 26, 1992. On the same day that the petition was filed, an order was entered in the Circuit Court ordering that:

1. The Ottawa County Friend of the Court shall continue to hold in escrow the disputed income tax refund intercept funds in the amount of $1,054.85 in this matter until hearing on the disposition of the same has been held.

2. Shannon and Howard Rouse shall appear before this court on Monday, the 22nd day of June, 1992, at 3:00 o'clock in the afternoon to show cause why the relief sought by the Friend of the Court should not be granted.

3. Copy of this order shall be served on Rouse no later than June 12, 1992.

By June 22, 1992, the bankruptcy petition had been filed and the state court held that it would do nothing until it heard from this court.

## JURISDICTION

This court has jurisdiction over this adversary proceeding by reason of 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), W.D.Mich. L.R. 57, and F.R.Bankr.P. 4003(d).

DISCUSSION

In this case a conflict arises between two important federal statutes. On the one hand is the Bankruptcy Code with its right to exempt certain assets of the bankruptcy estate to the debtor to aid him in his fresh start. On the other hand, we have the intercept procedure under the Internal Revenue Code and the Social Security Act.

### 1. *The Intercept Program.*

The Internal Revenue Code provides that in the case of an overpayment, it may or shall be credited to certain obligations. 26 U.S.C. § 6402(c) provides:

> (c) Offset of past-due support against overpayments.—The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. A reduction under this subsection shall be applied first to satisfy any past-due support which has been assigned to the State under section 402(a)(26) or 471(a)(17) of the Social Security Act, and shall be applied to satisfy any other past-due support after any other reductions allowed by law (but before a credit against future liability for an internal revenue tax) has been made. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

*See also* 42 U.S.C. § 664 (Social Security Act, Collection for past-due support from Federal tax refunds) and 26 C.F.R. § 301.-6402–5.

Shortly after the intercept system became operational, the issue arose whether payments involving earned income credits could be intercepted. After conflicts between the 2nd, 9th and 10th Circuits, the United States Supreme Court granted certiorari, *Sorenson v. Secretary of the Treasury of the U.S.*, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986). The Supreme Court settled the issue by holding that excess earned income credit can properly be intercepted under applicable statutes.

### 2. *Violation of the Automatic Stay.*

■ Debtors request this court to make a finding that Jaehnig violated the automatic stay. This court does not find that there has been any violation of the automatic stay by taking any of the actions prohibited by 11 U.S.C. § 362(a). The automatic stay did not come into effect until the filing of a petition under 11 U.S.C. § 302. Upon the filing of that petition, not only was no action taken but the Friend of the Court did all it could to protect the rights of all parties by placing the funds in escrow until determinations could be made as to the rights of the parties.

### 3. *Property of the Estate.*

■ The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> (1) ... all legal or equitable interests of the debtor in property *as of the commencement of the case.*

11 U.S.C. § 541(a) (emphasis added). The property of the Debtors' estate was determined as of the date of the filing of their bankruptcy petition, June 8, 1992. By that date the intercept procedure by the IRS and Michigan Department of Revenue had been completed. If the intercepted funds had been consumed by the Friend of the Court, the only refunds which would have become an asset of the estate on June 8 would have been the prorated interest in the 1992 income tax return which would not be due until April 15, 1993. However, when the Friend of the Court received the intercept funds, they deposited them into an escrow account and obtained an order of

sequestration. Therefore, the Debtors had an interest in the fund at the time of filing, causing it to become property of the estate.

### 4. *Turnover.*

An entity in control of property of the estate which the debtor may exempt under 11 U.S.C. § 522 is required to turn that property over pursuant to 11 U.S.C. § 542(a). The Debtors have petitioned this court to order turnover of the escrowed funds, but first they must be able to show that the funds qualify for an exemption.

### 5. *Exemption.*

From property of the estate, a debtor may exempt certain property under § 522 to aid him in a fresh start. The Debtors have claimed the tax refund held in escrow as exempt under § 522(d)(5). That provision allows for the debtor's interest in any property up to $400 in value plus up to $3,750 of the unused portion of the $7,500 residence or burial plot exemption to be exempted. The Debtors did not claim any residence or burial plot exemption, so the amount of the refund in escrow, $1,054.85, undoubtedly comes within the value limits of § 522(d)(5).

■ While the fund is subject to an order of sequestration and in an escrow account, that in itself will not interfere with a claim of exemption. The debtors have the right under § 522(f) to avoid the fixing of a lien on debtors' interest in property to the extent that such lien impairs an exemption. This right includes any lien that is a judicial lien. 11 U.S.C. § 101(36) defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." This language is broad and I hold that the fund in question is subject to a judicial lien, the type of lien avoided under § 522(f).

■ Having cleared all the foregoing hurdles, the Debtors run up against 11 U.S.C. § 522(c)(1) which provides:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title

as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title.

The debt which the Friend of the Court is attempting to collect is one of the kinds specified by § 523(a)(5), which states:

(a) A discharge under section 727 ... of this title does not discharge an individual from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 492(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State).

Thus any part of the funds under the control of the Friend of the Court and the Circuit Court for the County of Ottawa, State of Michigan, for confinement costs are not subject to the debtors' right to exemption under 11 U.S.C. § 522. Even though an income tax refund from any governmental unit is a part of the debtor's estate and is generally an asset that can be exempted under 11 U.S.C. § 522(d) up to the limits set therein, the court must deny the request of these Debtors for the turnover of the 1991 federal income tax refund in the amount of $1,054.85 since exemptions do not protect property from liability for child support, etc. as described under § 523(a)(5).

### 6. *Plaintiffs have raised several claims that seem to the court to be of a technical nature.*

a. No order exists relating to the "confinement cost" obligation. The court is in

possession of a certified copy of the order of Judge Townsend of the Circuit Court for the County of Ottawa ordering Rouse to pay confinement expenses to the Friend of the Court, dated May 29, 1990. Also, this court has a certified copy dated July 3, 1991 holding that the sum of the confinement costs is $1,086.14, this order being signed by Judge Bosman. The court assumes that these were presented to the court at the time of the hearing on the motion. If these documents are false, a complaint should be made to this court.

b. The State has not made any reasonable efforts to collect the confinement costs. This claim was not made in the plaintiffs' complaint and I have no recollection of any proofs being submitted at the time of trial. Jaehnig claims that much effort was made to enforce the orders of the court. Surely there should be a record of actions taken before the court or otherwise. Since the burden of proof is on the plaintiffs I find that the State made a reasonable effort to collect the confinement costs.

c. It is claimed that the confinement costs were not more than three months delinquent. Plaintiff Howard Rouse was ordered on May 29, 1990, to pay confinement expenses at the rate of $5.00 per week beginning June 1, 1990, until said expenses have been paid in full or until further order of the court. On July 3, 1991, Howard Rouse was ordered to pay $1,086.13 at the rate of $5.00 per week until said confinement expense has been paid. It is the claim of the Friend of the Court that as of August 1991, he had paid nothing. This matter was not raised in the pleadings and I have no recollection that Rouse appeared in court and testified that he had made regular payments or submitted receipts to this affect.

d. It is claimed that the Friend of the Court did not send a notice or correcting notice regarding "confinement costs." This issue was not raised in the pleadings. The court does not recollect any testimony or proofs being adduced at the time of the hearing on this claim. This court has no way of knowing what the notice sent to the IRS by the Friend of the Court provided or should have provided. No proofs were presented at the time of hearing. The only claims made by plaintiffs in their motion is that Jaehnig violated the automatic stay by intercepting debtors' 1991 federal income tax refund and that the escrowed funds along with court costs should be paid to them. As far as the records in this court would indicate there never was any complaint made as to the form of notice to IRS by Jaehnig in the motion of the plaintiffs or at the time of trial. I cannot determine that there was any error. I do not find that the form of notice was ever part of the proofs at the time of hearing. But even if the notice was improper, notice of some kind was given, and the entire amount owed has been received. At most there has been only a minor technicality with which this court will not concern itself.

e. It has been claimed that debtors are at least entitled to Mrs. Rouse's portion of their joint refund. 42 U.S.C. § 664(a)(3)(C) states:

If the other person filing the joint return with the named individual owing the past-due support takes appropriate action to secure his or her proper share of a refund from which a withholding was made under paragraph (1) or (2), the Secretary of the Treasury shall pay such share to such other person.

The plaintiffs' motion contains a "Notice of Income Tax Refund Used to pay Debts" addressed to plaintiff mailed by the Michigan Department of Treasury dated May 5, 1992. This notice states in part, "We have not received your Income Allocation to Non–Obligated Spouse (form C–4297) which was mailed to you a month ago.... Because we did not receive your form, we must forward all or part of your refund to that agency for a debt owed." Although the like forms by IRS were not furnished, I assume they would be the same, as the entire overpayment was sent to the Friend of the Court. The notice to plaintiffs from the Friend of the Court indicated that it received the refund from the federal government May 18, 1992.

## ORDER

From the above findings of fact and conclusions of law,

IT IS ORDERED as follows:

1. The court finds that the Friend of the Court Robert D. Jaehnig did not violate the automatic stay.

2. This court accepts the findings of The Honorable Calvin L. Bosman, Circuit Judge for the County of Ottawa, State of Michigan, and the automatic stay under 11 U.S.C. § 362 is hereby lifted to allow the said state circuit court to dispose of the funds being held in escrow according to state and federal laws. All funds not due to the State Department of Social Services and under the control of the Friend of the Court will be paid by him to the debtors as their exemptions under 11 U.S.C. § 522(d).

3. If there are any funds still held by the Michigan Department of the Treasury as overpayments on the debtors' 1991 income taxes, these monies may be paid to the debtors also as their exemptions.

4. No costs are allowed to any of the parties.